UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

LUVATA BUFFALO, INC., and AIG EUROPE,
S.A. in its own right and/or as assignee/subrogee
of Luvata Buffalo, Inc., Luvata Oy f/k/a Luvata
Holding Oy and Luvata International Oy,

                  Plaintiffs,

v.

LOMBARD GENERAL INSURANCE COMPANY
OF CANADA, AVEC INSURANCE MANAGERS,
INC., UNISON INSURANCE AND FINANCIAL
SERVICES, INC. and BOYD INTERNATIONAL
CONSULTANTS, INC.,

                  Defendants.

―――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

08-CV-00034(A)(M)

      This case has been referred to me by Hon. Richard J. Arcara to decide all non-

dispositive motions, hear and report on all dispositive motions, and otherwise supervise pretrial

proceedings [62].[1] The initial issue before me is whether plaintiffs Luvata Buffalo,

Inc.("Luvata") and AIG Europe, S.A. ("AIG") have standing to pursue their claims. That issue

was raised *sua sponte* by Magistrate Judge Leslie Foschio, to whom this case had originally been

assigned.

      Also before me are the motion of defendant Unison Insurance and Financial

Services, Inc. ("Unison")  to dismiss AIG's Intervenor Complaint [29], and the motion of

defendants Lombard General Insurance Company of Canada ("Lombard') and Avec Insurance

Managers, Inc. ("Avec") to amend their Answer [34].

―――――――――――――――――

[1]      Bracketed references are to CM-ECF docket entries.

For the following reasons, I recommend that Luvata's Amended Complaint and AIG's Intervenor Complaint not be dismissed for lack of standing, that Unison's motion to dismiss be denied, and that Lombard/Avec's motion to amend be granted.

## BACKGROUND

On or about March 20, 2007, Luvata contracted with MIH Scrap Metals International LLC ("MIH") to purchase 1,500 metric tons of copper cathodes. Amended Complaint [12], ¶24, Ex. D.  Pursuant to a December 14, 2006 Service Agreement with Luvata, defendant Boyd International Consultants, Inc. ("Boyd") was obligated to "oversee transactions and monitor all parties providing services", "check for compliance of goods with terms of purchase order", and to "assist in procuring marine cargo, transit and other relevant insurance". Id., Ex. C ("Boyd agreement").[2]  Pursuant to the Boyd agreement, all insurance services, including terms of coverage were to be provided by Unison.  Id.

In order to provide coverage for the shipment of copper cathodes, Luvata obtained a marine insurance policy issued by Lombard and underwritten by Avec (#AIMC 1288 A, hereafter the "Lombard policy"). Amended Complaint [12], Ex. A.  A binder for marine cargo specification compliance and cancellation coverage was also issued by Unison ("Unison binder").  Id., Ex. B.

MIH contracted with Mitsui O.S.K. Lines, Ltd. ("MOL") to ship the first 500 metric tons of copper cathodes from Tanzania to Canada.  Amended Complaint [12], ¶25.  The shipment sailed on July 24, 2007. Id.  Based upon a clean bill of lading from MOL and Boyd's verification that it had inspected the shipment, Luvata paid MIH $3,777,036.06 for the shipment.

---

[2]  AIG's  motion for a default judgment remains pending against Boyd [76].

Id., ¶¶30, 33, 35.  However, when the shipment was delivered to Luvata on September 24, 2007, it did not contain any copper cathodes.  Id., ¶36.

Following the loss, AIG reimbursed Luvata and/or its parent or affiliated companies $3,938,869.43 under its extended crime insurance policy (#107-4001) ("AIG policy").  Eusanio Affidavit [40], Ex. C; Intervenor Complaint [22], ¶9.  On November 7, 2007, Lombard disclaimed coverage for the loss, claiming (*inter alia*) that the theft occurred prior to the commencement of the shipment. Amended Complaint [12], Ex. F.  Luvata assigned to AIG the right to seek recovery from Lombard/Avec and/or any responsible party the amount which it had reimbursed to Luvata.  Intervenor Complaint [22], ¶59, Ex. 7.

On January 16, 2008, Luvata commenced this action against Lombard, Avec, Unison and Boyd, and Luvata amended its Complaint by stipulation on June 25, 2008. Complaint [1]; Amended Complaint [12].[3]  On November 20, 2008, the parties stipulated to permit AIG to intervene and to be joined or substituted as a party-plaintiff [21].  AIG seeks, *inter alia*, indemnification from Lombard for its failure to reimburse or indemnify it for any portion of Luvata's loss that it paid.  Intervenor Complaint [22], ¶60.

**ANALYSIS**

**A.      Do AIG and Luvata  Have Standing to Pursue Their Claims Against Lombard?**

At the June 4, 2009 conference Judge Foschio *sua sponte* "inquired as to the standing of both plaintiff AIG to pursue its claims for Luvata's substantial 'copper cathodes' loss

---

[3]      Related cases are also pending. *See* Luvata Buffalo, Inc. v. MOL Motsui O.S.K. Lines, Ltd., et al. (8-cv-701)(A)(M)) *and* AIG Europe, S.A. v. MIH Scrap Metals International, LLC (9-cv-612(A)).

paid by AIG and/or plaintiff Luvata to pursue its claimed unreimbursed loss", and the parties were provided the opportunity to submit briefing on the issue. AIG's November 25, 2009 letter [66].[4]

As a threshold issue, I must determine whether AIG and Luvata have standing to maintain their claims, because "it is not possible to reach the merits . . . without resolving the question of whether [plaintiffs] have standing to raise the claim in the first instance. The obligation that courts must resolve threshold questions of jurisdiction and standing before proceeding to consider the merits of a claim at any stage of a proceeding is 'inflexible and without exception.'" Antwi v. United States, 349 F. Supp. 2d 663, 669 (S.D.N.Y. 2004) (quoting Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95 (1998)). *See also* ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F. 3d 87, 105 n. 6 (2d Cir. 2007) ("Article III standing . . . should be determined before reaching the merits").

"The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is concrete and particularized . . . and . . . actual or imminent, not conjectural or hypothetical . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

---

[4]     AIG references a June 8, 2009 order from Judge Foschio requesting the parties to address standing. AIG's Reply Memorandum of Law [55], p. 1.   However, no such order appears on the docket.

1.      **AIG's Standing**

AIG seeks a declaratory judgment that Lombard is the primary insurer of Luvata's loss (first cause of action) and indemnification, reimbursement, contribution and/or apportionment from Lombard for the amounts it paid to Luvata for its loss (second and third cause of action). Intervenor Complaint [22].   As reflected in the caption of the Intervenor Complaint, AIG's claims are brought in its own right and/or as an assignee or subrogee of Luvata. With respect to AIG's claims brought in its own right against Lombard, Lombard argues that the AIG and Lombard policies cover distinct losses and risks, thereby leaving AIG wholly responsible for Luvata's loss.  Id., pp. 5-8.

Lombard's argument  "appears to conflate the threshold question of [a plaintiff's] standing under Article III . . . with the question of whether [a plaintiff] has a valid claim on the merits.  The two questions, however, are distinct." Lerman v. Board of Elections in the City of New York, 232 F. 3d 135, 143 n. 9 (2d Cir. 2000), cert. denied, 533 U.S. 915 (2001).  "An injury-in-fact need not be capable of sustaining a valid cause of action under applicable . . . law." Denney v. Deutsche Bank AG, 443 F. 3d 253, 264 (2d Cir.2006).

"'Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Building and Construction Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc., 448 F. 3d 138, 144 (2d Cir. 2006).  Accepting as true the allegations of the Intervenor Complaint, AIG alleges that Lombard was the primary insurer responsible for covering Luvata's loss, and that Lombard has refused to indemnify AIG for the $3,938,869.43 it paid to Luvata for the loss. Intervenor Complaint [22], ¶¶57,-60, 63-64.

Whether AIG and Lombard are considered co-primary insurers of the loss, or whether AIG is considered to provide excess coverage to Lombard's primary policy for this loss, AIG has standing to seek indemnification against Lombard. *See* <u>State of New York. v. Blank</u>, 27 F. 3d 783, 793 (2d Cir. 1994) ("New York law provides a cause of action for contribution between co-insurers 'when several insurers cover the same risk and payment for loss has been made by one, that carrier has a right to pro rata contribution from other insurers.'"); <u>International Multifoods Corp. v. Commercial Union Insurance Co.</u>, 309 F. 3d 76, 89 (2d Cir. 2002) ("under New York law, an insurer has a right in equity to collect a ratable contribution from any other insurer who is also liable for the same loss."); <u>Osorio v. Kenart Realty, Inc.</u>, 48 A.D. 3d 650, 653 (2 Dep't. 2008) ("[the primary insurer] bears the initial responsibility for defending and indemnifying Madison in the underlying action, and [the excess insurer] is entitled to full reimbursement accordingly"). "Where more than one insurer has issued policies covering the same risk, a court of equity will exercise jurisdiction over the entire controversy to resolve the rights of all the interested parties, particularly where the issues between the insurers and the insured are similar." <u>Maryland Casualty Co. v. W.R. Grace and Co.</u>, 218 F. 3d 204, 211 (2d Cir. 2000).

The issue in this case is whether Lombard's policy covers Luvata's loss or whether the AIG and Lombard policies cover the same risk. That issue is better addressed in a motion to dismiss under Rule 12(b)(6) for failure to state a claim, or in a motion for summary judgment.

Lombard also argues that AIG's claims against Lombard predicated on an assignment fail because Luvata is not permitted a double recovery for its loss and, as an assignee, AIG only attained the same rights to recovery as Luvata enjoyed prior to the

assignment. Lombard contends that since Luvata has been fully compensated prior to the assignment, any claims based on the assignment are moot. Lombard's Supplemental Memorandum of Law [53], p. 4. As to AIG's claims predicated on subrogation, Lombard argues that "'co-insurers cannot recover from one another on a subrogation theory because they are not seeking reimbursement from a third-party wrongdoer". Id., p. 8 (quoting National Casualty Co. v. Vigilant Insurance Co., 466 F. Supp. 2d 533, 540 (S.D.N.Y. 2006). In response, AIG states that "its claims are *not* predicated on assignment or subrogation rights *but rather* on AIG's independent equitable rights." AIG's Reply Memorandum of Law [55], p. 10.

Since I have concluded that AIG can pursue its claims against Lombard in its own right, I need not address whether it can pursue its claims on an alternative theory (assignment or subrogation) which it now apparently disavows. Therefore, I find that AIG has standing to maintain its claims against Lombard.


### 2. Luvata's Standing

Luvata asserts claims of breach of the Lombard policy (first cause of action) and seeks reformation of that policy (second cause of action). Lombard argues that Luvata "became fully compensated for the theft of copper cathodes under the policy issued by AIG. At that time, because the law abhors double recovery, Luvata no longer had a loss to recover from anyone." Lombard's Supplemental Memorandum of Law [57], p. 6.

A "general rule of liability insurance, [is] that one may not receive a double recovery for the same loss." 12 Couch on Insurance §173:53. However, Luvata argues that AIG "did **NOT** fully compensate Luvata on its claims", and that it is seeking to recover its unreimbursed losses, including its deductible or self-insured retention under the AIG policy, the

costs it incurred in borrowing funds to pay for the copper cathodes, and attorney's fees incurred in prosecution of this action. Luvata's Supplemental Reply Memorandum of Law [59], pp. 2-4 (emphasis in original). Thus, I find that Luvata has sufficiently alleged an injury in fact from its unreimbursed losses, and therefore has standing to pursue these claims against Lombard.

**B.     Unison's Motion to Dismiss the Intervenor Complaint**

The Unison binder provides $500,000 of coverage  for "*Any one Container, Specification Compliance*". Amended Complaint [12], Ex. B (emphasis added). On the other hand, the Lombard policy provides a limit of liability of  "$500,000 under the Specification Compliance Insurance Extension *any one Certificate of Compliance*." Id., Ex. B (emphasis added). "The significance of [the discrepancy] is that there were some 25 cargo containers but one certificate of compliance," thereby potentially limiting coverage under the Lombard policy to $500,000.   Lilling Affirmation [29], ¶5.

AIG alleges that it "is expressly assigned to the rights, claims, title and interests of Luvata, including Luvata's causes of action against Unison."  Intervenor Complaint [22], ¶107. AIG's Intervenor Complaint asserts an indemnification and/or negligence claim against Unison, seeking a judgment in the event the Lombard policy is limited to $500,000 in coverage (sixth cause of action), and in the alternative seeks reformation of the Lombard policy to correct this error (fifth cause of action).  Id.

In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . .  The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

AIG argues that since Unison relies on extrinsic evidence, including AIG's policy and a December 1, 2006 e-mail (Lilling Affirmation [29], Exs. H and J), Unison's motion should be treated as a motion for summary judgment and dismissed for failure to comply with Fed. R. Civ. P. ("Rule") 56 and Local Rule 56.1. AIG's Memorandum of Law [32], Point I. Rule 12(d) requires that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

However, "for purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F. 3d 81, 88-89 (2d Cir. 2000). This exception is premised on the fact that "when the plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Kamholtz v. Yates County, 2009 WL 3463481, *2 (2d Cir. 2009) (Summary Order).

It is undisputed that AIG has had knowledge of its policy throughout and used it in framing its Intervenor Complaint. The same cannot be said for the December 1, 2006 e-mail from Avec to Boyd and Unison, which is not referenced in the Intervenor Complaint and did not

involve AIG. Lilling Affirmation [29], Ex. J. While it is attached to Unison's motion, the

December 1, 2006 e-mail is not referred to in the motion, and Unison indicates that it can be

disregarded. Lilling Affirmation [37], ¶2. Therefore, I find no reason to convert Unison's

motion to a motion for summary judgment, and will exclude the December 1, 2006 e-mail in

resolving the motion. *See* DeLuca v. AccessIT Group, Inc., __F.Supp.2d__, 2010 WL 447114,

*3 (S.D.N.Y. 2010) ("pursuant to Rule 12(d) . . . these newly presented documents are not part

of the pleadings and will be excluded in deciding this motion to dismiss").


  **1.**  **Negligence Claim**

    Unison seeks to dismiss AIG's negligence claim against it by arguing that the

assignment did not assign to AIG any right to pursue its negligence claim against Unison.

Unison's Memorandum of Law [29], Point I. The assignment and release executed on September

19, 2008 provides that in consideration of $3,938,869.43, Luvata assigns to AIG

> "all rights, claims, title and interest which [Luvata] now has or
> may hereafter have against any principal responsible for the loss
> who becomes known, MIH Cathode Trading Co., Lombard
> Insurance, Boyd International Consultants, Intertek, Spirit and
> Truth Commodities, Madini Asili, Team Frieght, Mitsui O.S.K.
> Lines Ltd, any of their associates, beneficiaries, and any other
> person or persons, corporation or corporations or other entities, as
> provided in the above policy and to the extent of the payment
> made hereunder." Intervenor Complaint [22], Ex. 7.

    After the commencement of this litigation, apparently in an effort to correct any

potential deficiencies in the September 19, 2008 assignment, the parties executed a second

assignment dated March 2, 2009, specifically assigning Luvata's claims against Unison to AIG.

Eusanio Affidavit [331], Ex. 2. However, because AIG has not amended its Intervenor

Complaint to allege this newly executed assignment as the basis for its claims, I have not relied upon it.

"No specific or particular words are required to constitute an assignment. The intention of the parties is an important element. . . .  Dominion over the thing or right assigned must be relinquished by the assignor in order to constitute a valid assignment." Malone v. Bolstein, 151 F. Supp. 544, 547 (N.D.N.Y.), aff'd, 244 F. 2d 954 (2d Cir. 1957).  "[G]enerally the rules ordinarily applicable to the construction and interpretation of contracts are applied" to assignments. 29 Williston on Contracts (4th ed. 2009) §74:6.  *See also* MSF Holding Ltd. v. Fiduciary Trust Co. International,  435 F. Supp. 2d 285, 302 (S.D.N.Y. 2006).

"When the words of a contract convey a definite and precise meaning upon which reasonable minds could not differ, the contract may be interpreted by the court as a matter of law . . . . However, if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim . . . . Ambiguous language is that which is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business . . . . If ambiguity is found, it must be resolved - as well as all inferences drawn - against the moving party, which has the burden of establishing that no facts material to the outcome of the litigation are in dispute." Metro-Goldwyn-Mayer Studios Inc. v. Canal Distribution S.A.S., 2010 WL 537583, *7 (S.D.N.Y. 2010).

Unison argues that the assignment of Luvata's claims "against any principal responsible for the loss" was limited to tortfeasors responsible for the loss (Unison's Memorandum of Law [29], p. 2), whereas AIG argues that the language is not restricted to

tortfeasors.  AIG's Memorandum of Law [32], p. 21.  "It is a well recognized rule of construction that effect should be given to all provisions of an instrument whenever possible." Malone, supra, 151 F. Supp. at 547.  Reading the assignment as a whole, including the fact that it specifically assigned Luvata's claims against Lombard and Boyd, it would be a strained interpretation of the assignment to restrict it to claims against only the tortfeasors responsible for the loss.  *See* Commercial Union Insurance Co. v. Bituminous Casualty Corp., 851 F. 2d 98, 100 -101 (3d Cir. 1988) ("The insurer who pays for a loss obtains the insured's right of action against a third party ultimately responsible for the loss. . . .  The third party may be a tortfeasor, . . . or a contractual obligor").

Unison also argues that the language "as provided in the above policy" limits the rights assigned to those addressed in the AIG policy. Unison's Memorandum of Law [29], p. 2. In turn, the AIG policy "makes no mention of the right of AIG to pursue any recovery other than subrogation whereby AIG reserved the right to take over its insured's right to demand compensation from the entity responsible for the 'financial loss' or damage." Id. (emphasis in original).  However, AIG notes that such an interpretation would render the assignment mere surplusage, as those rights would have automatically been assigned pursuant to the terms of the policy without necessity for the assignment.  AIG's Memorandum of Law [32], p. 21; D.C. USA Operating Co., LLC v. Indian Harbor Insurance Co., 2007 WL 945016, *9 (S.D.N.Y. 2007) ("courts should construe contracts so as to avoid rendering contract language mere surplusage"). Thus, I cannot conclude as a matter of law that the assignment  fails to transfer Luvata's negigence claims against Unison to AIG.

In the alternative, Unison contends that the assignment is actually a subrogation agreement.  Relying on the "any principal responsible for the loss" language of the assignment,

Unison argues that the assignment only transfers the right to seek recovery from the tortfeasors responsible for the loss. Unison's Memorandum of Law [29], Point II.   According to Unison, since AIG can proceed only by subrogation against tortfeasors responsible for the loss, any claims against it predicated on subrogation must fail.  Id.

Although the general rule is that an insurer can only proceed by subrogation against a tortfeasor (*see* <u>Maryland Casualty Co.</u>, <u>supra</u>, 218 F. 3d at 211), there is conflicting authority as to whether an insurer can proceed by subrogation against its insured's broker for negligence. *Compare* <u>Dezer Properties II, LLC v. Kaye Insurance Associates, Inc.</u>, 831 N.Y.S.2d 146, 147 (1st Dep't 2007) ("even if Kaye [the broker] had been negligent in its handling of the claim, there would be no basis for a subrogation action since Kaye is not the party legally responsible for the underlying loss") *with* <u>Granite State Insurance Co. v. Diversified Edwards Agency</u>, 304 A.D. 2d 304, 305 (1st Dep't 2003) ("as to both Granite and Scottsdale, their allegations suffice to show that the alleged misnomer effectively left Kendrick uninsured, and that Granite's and Scottsdale's contributions towards the settlement of the underlying action therefore entitle them to be equitably subrogated to Kendrick's rights against Diversified [the broker] for failing to obtain proper insurance").

However, even if I were to conclude that AIG cannot proceed by subrogation against Unison,  the ambiguous language of the assignment - and whether it transfers only the right to proceed against tortfeasors responsible for the loss - cannot be resolved as a matter of law at this time.

## 2. Reformation

Unison makes no express arguments in support of its motion to dismiss AIG's reformation claim. In its reply, Unison states that it would support reformation of the Lombard policy to reflect the "per container" language, but argues for the first time that the "remedy of reformation should not lie against Unison, but rather against Lombard since the policy was between it and Luvata". Lilling Affirmation [37], ¶7. "However, new arguments may not be made in a reply brief". Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F. 3d 110, 112 (2d Cir. 1999).

Therefore, I recommend that Unison's motion to dismiss be denied.


## C. Lombard and Avec's Motion to Amend Their Answer to the Intervenor Complaint [34][5]

Lombard and Avec have moved for leave to amend their Answer to the Intervenor Complaint to add affirmatives defenses alleging that Luvata's assignment to AIG without Lombard's prior consent voided the policy (fourteenth affirmative defense), that AIG's

---

[5]    "Although the Court of Appeals for the Second Circuit has not ruled on whether a motion to amend a pleading is properly classified as dispositive or nondispositive, the weight of authority within this Circuit classifies a motion to amend a pleading as a non-dispositive pre-trial motion." Smith v. Goord, 2007 WL 496371, *2 (W.D.N.Y. 2007) (Siragusa, J.); Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007)("as a matter of case management, a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent")."On the other hand, some district courts in this circuit have held that a denial of a motion to amend is dispositive in situations where the denial is based on futility, because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions." Children First Foundation, Inc. v. Martinez, 2007 WL 4618524, *4 (N.D.N.Y. 2007). See, e.g.,Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 632 (E.D.N.Y. 1997) ("Defendant's motion for leave to amend the Answer results in a dispositive finding"). Therefore, erring on the side of caution, I will treat the motion as dispositive to the extent that the issue of futility of amendment is determinative of the outcome.

subrogation claims cannot be maintained against non-tortfeasors (fifteenth affirmative defense), and that to the extent Luvata's loss is insured by Lombard's policy, it is excess or co-primary insurance to AIG's policy (sixteenth affirmative defense) [34], Ex. A. AIG opposes the addition of these defenses as unnecessary and futile. AIG's Memorandum of Law [41], Point I.

Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F. 3d 104, 110 (2d Cir. 2001). "An amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to dismissal [under Rule 12(b)(6)] for failure to state a claim upon which relief may be granted." Christian v. Town of Riga, 649 F. Supp. 2d 84, 101 (W.D.N.Y. 2009) (Telesca, J.). "When amending an answer to add defenses . . . futility should be raised in the context of a motion to strike pursuant to [Rule] 12(f)." Children First Foundation, Inc. v. Martinez, 631 F. Supp. 2d 159, 168-69 (N.D.N.Y. 2007). Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The distinction between the standards set forth in Rule 12(b)(6) and 12(f) are 'semantic[al]' insofar as they are 'mirror image[s]' of each other." Children First Foundation, supra, 631 F. Supp. 2d at 169; FSP, Inc. v. Societe Generale, 2005 WL 475986, *8 (S.D.N.Y. 2005) ("A motion to strike an affirmative defense, pursuant to [Rule] 12(f), is also governed by the same standard applicable to a motion to dismiss pursuant to [Rule] 12(b)(6).").

While it is unclear whether Iqbal's "plausibility" pleading standard applies to affirmative defenses (see Del-Nat Tire Corp. v. A to Z Tire & Battery, Inc., 2009 WL 4884435, *1-2 (W.D. Tenn. 2009), citing conflicting authorities), I need not answer that question, for in Shechter v. Comptroller of City of New York, 79 F. 3d 265, 270 (2d Cir. 1996) (decided long

before Iqbal), the Second Circuit made clear that "affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy."

### 1. Fourteenth Affirmative Defense

Lombard's proposed fourteenth affirmative defense states:

"Pursuant to the terms of the Policy, [Luvata's] assignment of rights under the Policy to [AIG], without the prior consent of these Defendants, resulted in the Policy issued by these Defendants being voided." Peiper Affirmation [34-2], Ex. A, ¶45.

AIG argues that because the intervenor complaint does not seek any relief based on an assignment of Luvata's rights to AIG, the proposed assignment defense is unnecessary. AIG's Memorandum of Law [41], pp. 13-15. However, this affirmative defense does not challenge AIG's right to proceed as an assignee - instead, it alleges that Lombard's policy was voided by the assignment. Thus, I need not determine whether a defense challenging AIG's ability to proceed on an assignment theory is unnecessary, as such a defense has not been asserted.

Alternatively, AIG argues that this defense fails as a matter of law because "a transfer of an insured's rights after the loss occurred . . . is valid and enforceable - - irrespective of and notwithstanding any clause requiring consent for the assignment of the insurance policy." AIG's Memorandum of Law [41], p. 15. While acknowledging "that case law traditionally permits an assignment after a loss event occurs" (Lombard's Reply Memorandum of Law [44], p. 5), Lombard argues that "the circumstances surrounding the current loss raise suspicion over the viability of the purported assignment in general, let alone whether the negotiated agreement

between LUVATA and AIG violates the terms of the policy issued by LOMBARD/AVEC." Id. Lombard notes that an initial assignment and release was executed between AIG and Luvata on September 19, 2008 (Eusanio Affidavit [40], Ex. H), and then a second assignment, which was not referenced by AIG, was executed on March 2, 2009. Peiper Affirmation [43], Ex. A. According to Lombard, this "raises questions as to whether there were other assignments that are not known, or which, if any, of the purported assignments are currently enforceable" Id., pp. 5-6.

"Although assignment of the policy prior to loss [is] ineffective without the consent of the insurer, no such approval [is] necessary for an assignment of the right to the proceeds after the loss." Travelers Indemnity Co. v. Israel, 354 F. 2d 488, 490 (2d Cir. 1965); Ardon Construction Corp. v. Firemen's Insurance Co. of Newark, N.J., 16 Misc. 2d 483, 488, 185 N.Y.S.2d 723, 729 (N.Y.Sup. Ct. 1959), aff'd, 11 A.D.2d 766 (2d Dep't 1960) ("It has long been the doctrine of this State that rights under a policy of insurance may be assigned after loss notwithstanding a clause in the policy forbidding assignments . . . In fact, it has been held that a provision in an insurance policy prohibiting a transfer of the insured's interest after loss would be illegal and void.").

However, until Lombard has the opportunity to discover whether there were any assignments *prior* to the loss, which may have invalidated its policy, I cannot find this defense to be futile as a matter of law. Therefore, I recommend that Lombard be granted leave to assert this defense.

2.    **Fifteenth Affirmative Defense**

Lombard's proposed fifteenth affirmative defense states:

"These defendants are not active tortfeasors, and as such [AIG's] alleged subrogation claim cannot be commenced against these Defendants as unrelated third-parties." Peiper Affirmation [34-2], Ex. A, ¶46.

AIG argues that this defense is unnecessary because it "only has set forth claims, in its 'own right.'" AIG's Memorandum of Law [41], p. 18.   However, the allegations of the Intervenor Complaint, including those incorporated by reference to AIG's claims against Lombard, allege that Luvata assigned to AIG its claims for loss and is thereby "subrogated to *all* of Luvata's rights".   Intervenor Complaint [22], ¶59 (emphasis added).

Despite the allegations of the Intervenor Complaint, AIG argues that it has "clearly stated on the face of its Complaint . . . that its claims are *not* predicated on assignment or subrogation rights *but rather* on [its] independent equitable rights." AIG's Reply Memorandum of Law [55], p. 10 (emphasis in original).  I disagree and fail to see how - absent a further amendment of the Intervenor Complaint (which has neither been sought nor granted) -  AIG can disavow the allegations of that pleading. "Pleadings are for the purpose of accurately stating the pleader's version of the case, and they bind unless withdrawn or altered by amendment." <u>Sinclair Refining Co. v. Tompkins</u> 117 F. 2d 596, 598 (5th Cir.1941); <u>In re Ponderosa Development, LP,</u> 2007 WL 1556866, *2 (Bk. E.D.Tex. 2007) ("it is elementary law that parties are bound by their pleadings").

AIG having failed to offer any other reason why this defense is futile, I recommend that Lombard be granted leave to assert it.

### 3. Sixteenth Affirmative Defense

Lombard's proposed sixteenth affirmative defense states:

> "To the extent that [Luvata] is insured under policies issued by
> these Defendants, as well as [AIG], such insurance issued by
> [AIG] may be obligated to respond on a primary, or co-primary,
> basis to any of the purported losses sustained by [Luvata]."
> Peiper Affirmation [34-2], Ex. A, ¶47.

AIG argues that this defense was waived because it was not listed as a reason in Lombard's November 7, 2007 letter (Amended Complaint [12], Ex. F) disclaiming coverage for the loss. "New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." State of New York v. AMRO Realty Corp., 936 F. 2d 1420, 1431 (2d Cir. 1991).

However, Lombard argues that "at that time of the denial of coverage LOMBARD/AVEC were not even aware that additional insurance coverage may have been implicated", and that AIG failed to provide defense counsel with a copy of its policy until after the answer was served. Lombard's Memorandum of Law [44], pp. 8-9. At this point, therefore, I cannot conclude as a matter of law that Lombard had knowledge of this defense but failed to timely raise it.

AIG also argues that the proposed defense is futile because Lombard is the sole primary insurer responsible for the loss. AIG's Memorandum of Law [41], pp. 23-24. AIG points to its policy's double insurance provision which states that "the insurance does not apply to financial loss which can be indemnified through other insurance" (Eusanio Affidavit [40], Ex.

C, §III, 9), and to Lombard's concession that its policy contains no "other insurance" or "double insurance clauses". AIG's Supplemental Memorandum of Law [49], Ex. B.

Lombard argues that these terms do not establish which policy is primary to the other because the double insurance clause of AIG's policy, by its terms, applies only to policies covering "financial loss", whereas Lombard's policy covers a specified product (copper cathodes), as opposed to financial loss. Lombard's Memorandum of Law [44], pp. 9-10. Thus, it argues that discovery is necessary to establish the applicability of the double insurance clause. Id., p. 10. Because I cannot determine at this stage whether this defense is futile as a matter of law, I recommend that Lombard's motion to amend be granted.

Finally, AIG requests that "pursuant to Fed. R. Civ. P. 11(c)(3) or its inherent power, this court should issue an order to defendants Lombard and Avec to show cause why their instant motion did not violate Fed. R. Civ. P. 11(b) as it has no merit or is unnecessary." AIG's Memorandum of Law [41], Point II. However, since I am recommending that Lombard be granted leave to amend, this request is denied.

**CONCLUSION**

For these reasons, I recommend that Luvata's Amended Complaint and AIG's Intervenor Complaint not be dismissed for lack of standing, that Unison's motion to dismiss [29] be denied, and that Lombard's and Avec's motion to amend [34] be granted. After Judge Arcara resolves any objections to this Report and Recommendation, a status conference will be scheduled to address the discovery issues raised in AIG's November 25, 2009 correspondence [66].

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by March 22, 2010 (applying the time frames set forth in Fed. R. Civ. P. 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3) may result in the district judge's refusal to consider the objection.


**SO ORDERED.**

DATED:      March 4, 2010

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge